IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

|  |  |  |
|---|---|---|
| | Plaintiff, | REPORT AND |
| v. | | RECOMMENDATION |
| BRANDON HENDRIX, | | 09-cr-56-bbc |
| | Defendant. | |

---

## REPORT

The grand jury has returned a superseding indictment charging defendant Brandon Hendrix with being an unlawful user of controlled substances in possession of an SKS rifle and a Ruger .45 caliber pistol, in violation of 18 U.S.C.§ 922(g)(3). The firearms were found and seized during execution of a state search warrant. Hendrix, by previous counsel, moved to dismiss the firearms charge on Second Amendment grounds. *See* dkt. 16. Hendrix filed this motion prior to the return of the superseding indictment, which has charged the same statute against the same firearm possession but has added an allegation that Hendrix was an unlawful marijuana user. I will deem the motion renewed against the superseding indictment and include it in this report and recommendation. Because circuit law does not currently support Hendrix's motion, I am recommending that the court deny it.

Hendrix also has moved to quash the search warrant, alleging that the informant's allegations were not sufficiently trustworthy to provide probable cause. *See* dkt. 17. As discussed below, Hendrix has twice requested a *Franks* hearing, and twice I have declined to take evidence, the second time after the hearing actually had been convened. More on this below. I am recommending that the court deny this motion because there was probable cause to support the warrant.

I. The Constitutionality of § 922(g)(3)

Hendrix acknowledges that this court already has held § 922(g)(3) constitutional in *United States v. Yancey*, Case No. 08-cr-103-bbc, which currently is on appeal, but wishes to preserve his record on this point. Duly noted. Barring reversal by the Court of Appeals for the Seventh Circuit, the court's October 3, 2008 order in *Yancey* applies with equal force to Hendrix:

> Defendant is one of many charged or convicted persons who believe that the United States Supreme Court's decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), means that no one in possession of a firearm can be convicted of a crime, whatever the status of the person possessing it. Defendant is wrong. As this court noted recently, *Heller* stands only for the proposition that the District of Columbia cannot constitutionally ban handgun possession in the home for use in self-defense by persons not otherwise prohibited from gun possession. *United States v. Kilgore*, 2008 WL 4058020 (W.D. Wis. Aug. 26, 2008).

> *Heller* did not address a state's right to impose restrictions on handgun possession. Indeed, the Court said explicitly that its opinion was not intended to suggest that *all* gun laws and firearms restrictions are unconstitutional. *Id.*, at 2816-17 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ). As this court held recently in affirming the constitutionality of 18 U.S.C. § 922(g)(1), which criminalizes firearm possession by felons, *Heller* does not make the restrictions of 18 U.S.C. § 922(g) constitutionally suspect. Instead, this statute contains just the sort of longstanding prohibitions on firearm possession that *Heller* allowed. *Kilgore,* 2008 WL 4058020.

> Since *Heller* was decided, no court has found the firearm restrictions in 18 U.S.C. § 922 to be unconstitutional, even under an individual rights interpretation of the Second Amendment. Instead, courts have repeatedly affirmed the constitutionality of the statute's prohibition of firearm possession by felons, E.g.,

*Kilgore*, 2008 WL 4058020; *United States v. Robinson*, 2008 WL 2937742 (E.D. Wis. July 23, 2008); *U.S. v. Brunson*, 2008 WL 4180057 (4th Cir. Sept. 11, 2008); *United States v. Irish*, 2008 WL 2917818 (8th Cir. July 31, 2008); *United States v. Gilbert*, 2008 WL 2740453 (9th Cir. July 15, 2008)); persons convicted of domestic violence offenses (*United States v. Booker*, 2008 WL 3411793 (D. Maine Aug. 11, 2008); *United States v. White*, 2008 WL 3211298 (S.D. Ala. Aug. 6, 2008)); and illegal aliens (*United States v. Boffil-Rivera*, No. 08-20437(S.D. Fla. Aug. 12, 2008)). Although to my knowledge no court has confronted the provision defendant challenges, which prohibits firearm possession by an unlawful user of a controlled substance, the provision's constitutionality is not suspect. Rather, it is another example of a longstanding prohibition on firearm possession that *Heller* permits.

  If the government proves, as it has charged, that defendant is an unlawful user of a controlled substance and that he was in knowing possession of a firearm, a jury could find defendant guilty of violating 18 U.S.C. § 922(g)(3). Such a conviction would not violate the Second Amendment to the United States Constitution. Nothing in *Heller* restricts the federal government from criminalizing the possession of firearms by unlawful users of controlled substances.

Case No. 27 08-cr-103-bbc, dkt. at 1-3.

I am recommending that this court deny Hendrix's motion to dismiss the charge against him.

3

II. Probable Cause for the Search

Hendrix's bid to suppress the firearms charged against him is premised on his contention that the police informant—now acknowledged to be Herman Bell--was untrustworthy. Hendrix asked for a *Franks* hearing[1] in conjunction with his first motion to suppress (dkt. 17) to prove that Bell was untrustworthy and that the police knew it. I denied this request for reasons explained in a July 2, 2009 order. *See* dkt. 20. (This order provides helpful factual and legal background to the suppression dispute, so I incorporate it here by reference as part of the report and recommendation on Hendrix's second motion to suppress).

The *Franks* claim veered unexpectedly when Hendrix submitted a second motion to suppress (dkt. 32) accompanied by an affidavit from Bell in which Bell disavowed the information attributed to him in the search warrant affidavit, averring that he had never been contacted by the police that month to be an informant and had never been involved in any drug purchase with Hendrix. ( dkt. 34). At a telephonic hearing with both sides' lawyers, the Assistant U.S. Attorney expressed outrage at what she deemed to be a provably false flip-flop by Bell.

Even so, I added a *Franks* hearing to the agenda of the October 8, 2009 pretrial motion hearing, finding that Bell's affidavit qualified as a substantial preliminary showing that the search warrant affidavit was false. The government announced it would be presenting evidence that Bell's affidavit was false. In light of this, I authorized the appointment of counsel for Bell. At the October 8, 2009 pretrial motion hearing, Bell's attorney announced that Bell was

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

withdrawing his affidavit, that if called to testify, Bell's testimony would not be consistent with the affidavit and that if pressed, Bell would decline to answer questions based on his Fifth Amendment right against self-incrimination.  In light of Bell's recantation and his announcement that his testimony would not support Hendrix's motion to suppress, I determined that the basis for holding a *Franks* hearing had evanesced and took no evidence.  Nonetheless, I allowed the parties to brief the motion to suppress.  *See* dkt. 38.

In his post-hearing brief (dkt. 40), Hendrix contends that he still is entitled to a *Franks* hearing, arguing that Bell should be deemed a government agent whose acts, omissions and prevarications can be directly attributed to the search warrant affiant under agency principles. *See, e.g., United States v.McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994); *United States v. Koenig*, 856 F.2f 843, 847 (7th Cir. 1988).  According to Hendrix, Bell lied about buying drugs from Hendrix at the time the police applied for their search warrant, Bell told the truth in his affidavit in support of Hendrix's motion to suppress, then reverted to his lying ways when, through counsel, he recanted the affidavit and announced that any testimony at a *Franks* hearing would be contrary to the affidavit.

There's a paradox lurking here. Hendrix realizes that, pursuant to *McAllister*, a search warrant affiant generally is not held responsible under *Franks* for lies told by an informant if the affiant did not know that the informant was lying; however, the affiant *is* held responsible for lies told by a fellow officer so that the police cannot launder questionable information through a guileless affiant.  18 F.3d at 1417-18.  So, one route over this hurdle is for Hendrix to label Bell an agent of the police so that Bell's "lies" about Hendrix selling him crack can be attributed to the affiant for the search warrant even if the affiant was not aware that Bell was lying.  But

5

in the "true" affidavit propounded by Hendrix, Bell swears that he was never contacted by the police in April 2009 to act as an informant with respect to Hendrix.  So what is the basis for this court to construe Bell to be a government agent?  There is none, and I decline to do so.  Hendrix was a garden-variety snitch working off a beef by buying crack under police direction.

A more fundamental problem for Hendrix is that Bell has disavowed his affidavit, so that there is no admissible evidence in the record contradicting the version of events presented by the police in their search warrant affidavit.  Bell's account of what happened at Hendrix's house is like Wisconsin's weather: if you don't like it, wait five minutes, it'll change. One might then ask: if Bell now has exposed himself to be an opportunistic and untrustworthy story-teller, then shouldn't this court weigh his (in)credibility when determining whether the police broke the rules by presenting Bell's incriminatory version of events to the court for a search warrant?

No.  There was only one version of events–the one that Hendrix doesn't like–being propounded at the time the police obtained their warrant.  The affidavit for the warrant cannot be challenged post hoc by information that was unknown to the police at the time they applied for the warrant.  *Cf. Johnson v. Saville*, 575 F.3d 656, 661 (7th Cir. 2009) (in an arrest case, "the existence of probable cause is measured based on the facts known to the officers at the time"); *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006) (government cannot bolster probable cause determination for warrant with post-hoc filings); *United States v. Washburn*, 383 F.3d 638, 643 (7th Cir. 2004) (when deciding whether a defendant abandoned luggage, the flow of information stops the moment the officer opens the bag).

One could hypothesize skullduggery by both sides here[2] but this doesn't advance the analysis in the absence of evidence; there is no evidence because this court declined to hold a *Franks* hearing; and this court declined to hold a *Franks* hearing because Hendrix has not made a substantial preliminary showing that the police intentionally or recklessly misstated a material fact in the warrant affidavit. Circling back to a point made in this court's previous order denying Hendrix's request for a *Franks* hearing, the police had objective evidence that drugs were present in 4502 Jenewein Road that likely would support a probable cause determination despite any concerns about Bell's reliability. Bell went into Hendrix's house empty and came out four minutes later with two grams of crack..[3] The police observed frequent, short-term foot traffic at the residence. Hendrix had prior arrests on drug charges. *See, e.g., United States v. Hoffman*, 519 F.3d 672, 676-77 (7th Cir. 2008) (totality of circumstances established probable cause to search alleged drug dealer's home even if informants were deemed new and of unknown reliability).

The bottom line is that the state search warrant was supported by probable cause. Hendrix's challenges to the forthrightness of the police and to Bell's actual role in the events at issue, while alarming at face value, are not sufficiently supported even to obtain a *Franks* hearing, let alone to quash the warrant and suppress evidence.

---

[2] The government holds up its end in the innuendo skirmish at page 3 of its brief, suggesting that Bell may have signed the since-disavowed affidavit under duress or coercion, or without understanding its contents.

[3] It is difficult to reconcile this fact with Bell's denials in his offered-and-withdrawn affidavit, but as already noted, it is not necessary to speculate about these inconsistencies.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny Hendrix's motion to dismiss the indictment and deny his motions to quash the search warrant and suppress evidence.

Entered this 30th day of October, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                              Telephone
STEPHEN L. CROCKER                                                                          (608) 264-5153
U.S. Magistrate Judge

October 30, 2009

Rita Rumbelow
Assistant United States Attorney
660 West Washington Avenue, #303
Madison, WI 53703

Peter A. Bartelt
160 Business Park Circle
Stoughton , WI 53589

> Re:___United States v. Brandon Hendrix
>          Case No. 09-cr-56-bbc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before November 9, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by November 9, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,
/s/ Melissa Hardin for
Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

> (1) injunctive relief;
>
> (2) judgment on the pleadings;
>
> (3) summary judgment;
>
> (4) to dismiss or quash an indictment or information;
>
> (5) to suppress evidence in a criminal case;
>
> (6) to dismiss or to permit maintenance of a class action;
>
> (7) to dismiss for failure to state a claim upon which relief can be granted;
>
> (8) to dismiss actions involuntarily; and
>
> (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**

11